IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

SHAWN JUAREZ CAMPOS a/k/a )
Ascencion Juarez Campos ) No. 2-07-0029
 )
v. )
 )
MTD PRODUCTS, INC. d/b/a Cub )
Cadet )

O R D E R

By order entered January 22, 2009 (Docket Entry No. 114), the defendant's motion for a protective order (Docket Entry No. 112), was referred the Magistrate Judge. The plaintiff filed a response to the motion (Docket Entry No. 125), but the defendant has not filed nor sought to file a reply.

As provided herein, the defendant's motion for protective order (Docket Entry No. 112) is GRANTED.

The defendant seeks a protective order to prevent the plaintiff from subpoenaing tax returns and other private financial records of Dr. Harry L. Smith, the defendant's expert, and Biodynamic Research Corporation ("BRC"), the company for which Dr. Smith works and in which he has a 9% ownership interest. The records at issue are those described in paragraphs 24 and 25 of the plaintiff's subpoena duces tecum served on Dr. Smith, and paragraph 4 of the plaintiff's subpena duces tecum served on BRC.[1]

Paragraph 24 of the subpoena duces tecum served on Dr. Smith requests as follows:

Income records, Form 1099s, and/or ledger books, or summaries thereof, for the taxable years 2003, 2004, 2005, 2006, and 2007, which income records reflect your gross income for each such year, and which reflect income for each such year that you have received from insurance companies, general adjustment agencies, or Workmen's Compensation carriers, or from any attorneys or agents acting on their behalf or representing their interest, which income was derived from your

---

[1] There were initially other disputed issues related to these subpoenas duces tecum, but the parties were able to resolve all issues except those specifically raised in the defendant's motion. See Docket Entry Nos. 112-4 and 112-5.

> examination, preparation of reports of such examinations, and testimony given with respect to such examinations, of any person asserting a claim which might be compensated or paid for by such companies or carriers.

Paragraph 25 of the subpoena duces tecum served on Dr. Smith requests as follows:

> Income records, personal tax records, K-1 partnership or corporate tax forms, W-2's showing your personal income from Biodynamic Research Corporation for the years 2003, 2004, 2005, 2006, and 2007.

Docket Entry No. 112-2, at 8.

Paragraph 4 of the subpoena duces tecum to the custodian of record of BRC essentially mirrors the same request made to Dr. Smith in paragraph 24 above. Docket Entry No. 112-3, at 6.

The defendant has agreed to disclose financial information relating to Dr. Smith's work in this case, his work on behalf of the defendant in other cases, and his work for defendant's counsel in other cases,[2] but argues that the financial information and tax records of an expert witness exceed the bounds of permissible discovery, and that such requests are unduly burdensome, overly broad, unreasonable and oppressive.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that a party must disclose a written report of any expert witness containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

---

[2] Specifically, the defendant has agreed to produce billing or account statements showing charges made or fees received for services performed in this case, bills or invoices for services performed on behalf of the defendant's counsel from 2003 through 2007, and all IRS Forms 1099 or other documents showing compensation received from defendant's counsel or the defendant from 2003 through 2007. See Docket Entry No. 113, at 8.

2

The plaintiff argues that the information sought is relevant to his claim and that Rule 26(b)(1) of the Federal Rules of Civil Procedure provides a discovery standard that "is vast and encompasses a broad range of information." Docket Entry No. 125, at 3. The plaintiff seeks the requested documents to show the bias of Dr. Smith and his company based on "pay for performance." Id. at 4. The plaintiff contends that it is important to know what percentage of Dr. Smith's hourly rate he earns as an employee of BRC and what portion he earns as a 9% owner of BRC. The plaintiff also argues that the total amount Dr. Smith has been paid "with respect to the case at bar" is more probative of his bias than his hourly rate. However, it appears to the Court that the defendant has provided the plaintiff the total amount Dr. Smith has been paid in this case.

The plaintiff relates that 90-95% of the time Dr. Smith provides expert opinions for defendants or those acting on behalf of defendants,[3] and that his ownership interest in BRC accounts for 80-90% of his gross personal income. According to the plaintiff, however, it is the total amount of such income and the specific sources that are particularly critical. The plaintiff also scoffs at the defendant's concern that allowing the plaintiff to delve into financial matters could chill the willingness of Dr. Smith and BRC to provide expert opinions since BRC is in the business of providing such services.

Specifically, the plaintiff points to the fact that Dr. Smith has opined that the plaintiff was impaired by alcohol use on the day of the accident and that such impairment was a cause of the accident, yet Dr. Smith did not perform any tests or experiments on which to base that opinion nor did he speak to any witnesses or consult with any medical personnel. In addition, the plaintiff contends that Dr. Smith did not take into account any contradictory evidence from deposition testimony and medical records. Thus, the plaintiff essentially concludes that Dr. Smith is willing to rely on flimsy evidence while ignoring all other evidence to espouse opinions that are favorable to the defendant which pays him $625.00 per hour for his services.

---

[3] The defendant estimates this percentage as 95%. Docket Entry No. 113, at 8.

3

Viewing expert testimony with a skeptical eye is nothing new. As early as the late 1880's, the Harvard Law Review quoted a reported story that a lawyer had included in his closing argument that "there are three kinds of liars,--the common liar, the d--d liar, and the scientific expert." William L. Foster, Expert Testimony,--Prevalent Complaints and Proposed Remedies, 11 HARV. L. REV. 169 (1897). The concerns about a so-called expert opining on subjects about which he knows nothing or does not have the experience or expertise to opine or opining on "junk science" have been addressed in cases requiring the courts to engage in gatekeeping functions. See, e.g., Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, the concern remains that expert witnesses are, in effect, hired guns, who, while educated and experienced in the field, are willing and able to hire themselves out to the highest bidder to provide opinions in favor of the hiring party. Such concerns have led courts to open the door to the opposing party to obtain information from experts beyond that provided in Rule 26(a)(2)(B), including financial information that would indicate their lack of impartiality and their bias in favor of the hiring party. It appears that Rule 26(a)(2)(B) itself, which requires disclosure of compensation to be paid to the expert in the case, is grounded in such a concern. In this case, the defendant has agreed to provide information beyond that required by Rule 26(a)(2)(B). See supra at 2 & n.2. The question presented is whether the defendant should be required to go further and provide additional financial information that could suggest bias.

Courts have not been uniform in their approach to this question and many of the federal cases addressing this issue are unreported district court opinions. The parties have not cited and the Court has not found any Court of Appeals cases addressing this issue. Some courts have come close to categorically denying the type of financial information requested in this case. See Wacher v. Gehl Co., 157 F.R.D. 58, 59 (W.D. Mo. 1994), in which the Court held that, unless there was evidence of a "special relationship" between the expert and counsel or between the expert and the party, requests for tax returns constitute a "fishing expedition" and that permitting such "indiscriminate

discovery" could "prevent highly-qualified and objective experts from serving as witnesses, while yielding very little, if any, information" that would be helpful to the trier of fact.[4] Similarly, in Langbord v. United States Dep't of the Treasury, 2008 WL 4748174, \*\*5-6 (E.D. Pa. Oct. 22, 2008), relying in part on the Advisory Committee comments to the 2000 amendments to Rule 26, and applying the balancing test of Rule 26(b)(2)(C)(iii), the Court declined to compel discovery of an expert's compensation from sources unrelated to his role in the lawsuit without a showing of a direct financial relationship with a party or an attorney or in the litigation itself. See also Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc., 257 F. Supp.2d 751, 757 (S.D.N.Y. 2003), in which the Court declined to compel production of personal and financial records of experts when the plaintiff had asserted that the experts' opinions had changed because of compensation paid by the defendant, absent a showing that the expert opinion had "materially changed" so as to "raise a reasonable suspicion that the compensation paid to such expert may have affected the subsequent opinion," based on the Court's concern that such requests could be abused and would distract and impede the opposing party rather than assist in preparing cross-examination.

In contrast, other courts have ordered the disclosure of significantly broader financial information. In Butler v. Rigsby, 1998 WL 164857 (E.D. La. Apr. 7, 1998), the Court required physicians who treated the plaintiffs to produce a listing of their current patients, the total number of their patients referred by plaintiffs' counsel, the net income of the physicians' medical groups, the percentage of their net income that is litigation-related, and three years' worth of income of the physicians' medical groups. In Spencer v. United States, 2003 WL 23484640 (D. Kan. Dec. 16, 2003), the Court held that an expert's gross income from litigation was relevant to show possible bias and compelled the defendant's expert to testify about how much gross income he earned from litigation consulting and how many files he worked on annually, even though the expert had testified that 95% of his income was from litigation consulting. See also Jones v. Young, 2007 WL 2695621

---

[4] While the Court in Wacher acknowledged that the tax returns could "conceivably lead to admissible evidence of bias," it found that the defendant had not shown that it was "reasonably calculated to lead to the discovery of such evidence."

5

(E.D. Ark. Sept. 10, 2007) (plaintiff entitled to the amount of income expert receives in litigation-related matters).

Some courts have focused on disclosure of payment to an expert from the attorney in other cases in which the same attorney retained the same expert. See Smith v. Transducer Tech., Inc., 2000 WL 1717334 (D. Virgin Islands Nov. 16, 2000); First State Bank of Junction City, Kan. v. Deere & Co., 1991 WL 46375 (D. Kan. Mar. 15, 1991) (requiring disclosure of such information but denying request for expert's tax returns). Other courts have balanced an entitlement to show bias against broad requests for financial information. See, e.g., Rogers v. United States Navy, 223 F.R.D. 533 (S.D. Cal. 2004), in which the Court granted the government's motion for a protective order, precluding disclosure of the actual dollar amount of income derived from consulting services, when the government's expert had agreed to provide estimates of the percentages of the expert's medical practice that included forensic and clinical work, the percentage of income derived from forensic work, the percentage of his forensic work on behalf of plaintiffs and defendants, the number of forensic evaluations he performed per week, and his hourly billing rate for his forensic services.

In the oft-cited case of Behler v. Hanlon, 199 F.R.D. 553 (D. Md. 2001), the Court described an "independent medical examination ('IME')" under Rule 35 of the Federal Rules of Civil Procedure as an "euphemistic[]" characterization and found that "no intellectually honest argument" could be made that the plaintiff's requests for tax returns, income earned as an expert, the amount of time spent in that regard, and the attorneys and insurance companies on whose behalf he provided forensic services would not be relevant to show bias or prejudice. Id. at 554, 561. However, the Court found that the plaintiff's requests for total income earned over the last five years, hours spent by the expert, copies of tax returns, and listings of insurance companies which retained him was "overkill." Id. While conceding that there might be circumstances under which an expert's gross income and specific amount of income derived from expert services could be discoverable, such discovery should not be permitted absent a showing of why the "less intrusive financial information would not suffice." Id. at 561.

6

In <u>Behler,</u> the Court concluded that "permitting routine disclosure of the expert's gross compensation, from all sources--including those unrelated to litigation activities--would provide the jury with little information relevant to a fair assessment of the expert's credibility, while concomitantly introducing the real possibility of creating confusion, distraction and even prejudice." <u>Id.</u> at 561. The Court held that a jury would have sufficient information to assess bias if provided the percentage of the expert's income derived from expert witness services on behalf of insurance companies and/or attorneys defending personal injury cases, a list of cases in which he has provided such services during the last five years with the names of attorneys and/or claims representatives, and the names of the insurance companies for which the expert provided expert services in the last ten years. <u>See also Sullivan v. Metro N. R.R. Co.,</u> 2007 U.S. Dist. LEXIS 88938 (D. Conn. Dec. 3, 2007).

This Court finds the careful analysis in <u>Behler</u> to be persuasive. It also appears to the Court that the defendant has provided or agreed to provide to the plaintiff much of the information that the <u>Behler</u> Court ordered disclosed, specifically, the percentage of his income derived from providing expert witness services, as well as financial information relating to expert services performed on behalf of the defendant and defendant's counsel in other cases. Although <u>Behler</u> may have permitted additional information, it does not appear that the plaintiff has requested that specific information in this case. The Court finds, as did the Court in <u>Behler,</u> that the remaining requests represent "overkill." Although the plaintiff gives short shrift to the defendant's suggestion that production of the requested information could have a chilling effect on Dr. Smith, the Court notes that requiring production of the requested financial information could also have a chilling effect on other experts whose substantial income is, unlike Dr. Smith, not derived from producing expert opinions. Most significantly, the plaintiff has not shown that the information forthcoming from the defendant will be insufficient to show any bias on Dr. Smith's part. The plaintiff has not persuaded the Court that the exact amount of income Dr. Smith makes, either from work as an expert or otherwise, would substantially add meaningful information. Having concluded that the defendant

7

shall not be required to produce further financial information relating to Dr. Smith, the same analysis applies to the request for information from BRC.

Inasmuch as only the instant motion was referred to the Magistrate Judge for consideration, unless otherwise directed by the Court, there will be no further proceedings before the Magistrate Judge in this case.

Any party desiring to appeal this order of the Magistrate Judge may do so by filing a motion for review no later than ten (10) days from the date of service of this order. The motion for review must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for the appeal. See Rule 9(a)(1) of the Local Rules for Magistrate Judge Proceedings.

It is so ORDERED.

_____
JULIET GRIFFIN
United States Magistrate Judge